1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

PAMINA, LLC, as owner of the vessel, *M/V PAMINA* (Official Number 1143720), BRIAN PICKERING and LAURIE PICKERING, as sole members of PAMINA, LLC, and MARKEL AMERICAN INSURANCE COMPANY, as subrogee of Pamina, LLC, Brian Pickering and Laurie Pickering,

IN ADMIRALTY

No. 2:22-cv-01679-KKE

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

12

                    Third-Party Plaintiffs,

13

        v.

14

15

DELTA MARINE INDUSTRIES, INC., N C POWER SYSTEMS CO., GLENDINNING PRODUCTS LLC, and DOCKMATE, INC.,

16

                    Third-Party Defendants.

17

18

IN RE: COMPLAINT AND PETITION OF PAMINA, LLC, as owner of the vessel, PAMINA, FOR EXONERATION FROM OR LIMITATION OF LIABILITY

19

20

    While the *Pamina,* a 64-foot yacht, was transiting through the Ballard Locks in May 2022,

21

it abruptly started to reverse while its engine control levers were in neutral.  Before the *Pamina*'s

22

owners could shut off its engines, the *Pamina* allided[1] with multiple other vessels, causing damage

23

24

[1] An "allision" as used in admiralty law refers to a violent encounter of a moving vessel and a stationary object, whereas a "collision" is the violent encounter of moving vessels.  *See* 2 ADMIRALTY AND MARITIME LAW § 14:1 (6th ed.).

ORDER - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

to itself, the other vessels, and a passenger on another vessel.  This admiralty action followed, to determine liability for the damage resulting from the allision.

Third-Party Defendant Glendinning Products LLC ("Glendinning"), which manufactured one of the engine control systems installed on the *Pamina*, has moved for summary judgment on all claims asserted against it.  Dkt. No. 114.  The Court has considered the parties' briefing, the remainder of the record, and the oral argument of counsel.  Because there remain, at this stage of the lawsuit, disputes of fact as to Glendinning's liability on most of the claims, the Court cannot find that Glendinning is entitled to judgment as a matter of law and therefore denies the motion, except to the extent that the parties agree that one claim may be dismissed.

## I.     BACKGROUND

The *Pamina* is a 2003 Grand Alaskan Trawler equipped (at the time of the allision in May 2022 that gave rise to this lawsuit) with marine diesel engines, electronic engine controls (manufactured by Glendinning), a wireless remote-control system for the engines (manufactured by Third-Party Defendant Dockmate, Inc.), and bow thruster controls, along with other system controls.  *See* Dkt. No. 80 ¶ 5.  Although the current owners of the *Pamina* (Third-Party Plaintiffs Brian and Laurie Pickering) are not the original owners and the vessel has had another name in the past, the Glendinning engine controls have been present on the vessel now known as the *Pamina* ever since it was built.  Dkt. No. 115 at 20, 53–55; Dkt. No. 121-1 at 6, 11.

When the Pickerings bought the *Pamina* in Maryland in 2018, the vessel was professionally inspected and that inspection yielded no concerns about the boat, its engines, or its electrical system.  Dkt. No. 115 at 10–14.  The *Pamina* then sailed from Maryland to Florida so that the boat could be shipped to the Pacific Northwest.  *Id*. at 10–12, 48.  While the *Pamina* was in Florida, it was stored in Fort Lauderdale at Atlantic Yacht Services.  *Id*. at 15–16, 47.  Atlantic Yacht Services

recommended that the Pickerings install the Dockmate remote control system and the Pickerings agreed. *Id*. at 15–18.

After the Dockmate system was installed, the *Pamina* was shipped to Victoria, British Columbia, and then cruised from Victoria to Seattle's Lake Union on July 18, 2018. Dkt. No. 115 at 63. Over the next approximately four years, until the date of the allision, the Pickerings logged more than 500 hours of engine runtime. Dkt. No. 115 at 19, 23. The Pickerings did not experience or report any problems with the Glendinning system during that time, nor did they notice or report any problems with the Glendinning system on the date of the allision before it occurred. *See* Dkt. No. 115 at 23, 30–31. From September 10, 2021, through early April 2022, the *Pamina* was stored at the Delta Marine facility for work on its engines and engine systems, which was performed by N C Power, Delta Marine and/or other contractors and subcontractors. Dkt. No. 115 at 32–33. Between the time that the Pickerings retrieved the *Pamina* from the Delta Marine facility and the date of the allision the next month, the Pickerings logged about five hours of engine runtime. Dkt. No. 80 ¶ 17.

On the date of the allision, May 28, 2022, the Pickerings departed their Seattle marina for Poulsbo, via the Ballard Locks. Dkt. No. 115 at 20, 23. On that day, the Dockmate remote control system did not work properly, so the Pickerings used the engine controls in the pilothouse instead of the remote system. Dkt. No. 115 at 25, 45. The throttles appeared to be working fine, and Brian Pickering made a mental note to investigate the problem with the Dockmate system at another time. *Id*. at 25, 34.

The Pickerings navigated to the locks. While he watched the west gates open to Puget Sound, Brian Pickering felt the boat jolt abruptly into reverse (although *Pamina*'s engine control levers were in neutral) and heard Laurie Pickering ask him what he was doing. Dkt. No. 115 at 26–27. At the time, he was outside the pilothouse, and no one was at the helm of the ship or near

the engine controls, so he ran to the pilothouse and eventually turned off the engines. *Id*. at 27; Dkt. No. 121-1 at 25–26, 30–31. The *Pamina* allided with multiple other vessels, causing damage to them and to the *Pamina*. Dkt. No. 4 ¶ 6. The other boats eventually exited the locks, the *Pamina* was towed to the Delta Marine facility, and multiple claims and this lawsuit were filed. Dkt. No. 115 at 41.

The lawsuit was filed by Petitioner Pamina, LLC, under the federal Limitation of Liability Act ("LOLA"), 46 U.S.C. §§ 30501–30512. Dkt. No. 1. Petitioner amended its LOLA complaint (Dkt. No. 4), and many parties filed answers, including Geico Marine Insurance Company, Nicholas Leede, Federal Insurance Company, Anahit Hovhannisyan, Lake Washington Yacht Charters LLC, and Atlantic Specialty Insurance Company (collectively "Claimants"). Dkt. Nos. 15, 19, 22–23. Petitioners/Third-Party Plaintiffs (the Pickerings; Pamina, LLC (as owner of the *Pamina*); and Markel American Insurance Company (subrogee of the other petitioners)) then filed a third-party complaint against Third-Party Defendants Delta Marine Industries, Inc.; N C Machinery Company; Glendinning; and Dockmate. Dkt. Nos. 26 (original third-party complaint), 80 (amended third-party complaint). The amended third-party complaint lists, among other things, five causes of action against Glendinning, for strict products liability, negligence, violations of Washington's Consumer Protection Act ("CPA"), indemnity and/or contribution, and declaratory relief. Dkt. No. 80. Claimants also brought cross-claims for negligence and strict products liability against Glendinning and Dockmate, among others. Dkt. Nos. 68, 69, 72.

Glendinning filed a motion requesting summary judgment on all claims raised against it and that it be dismissed from this lawsuit with prejudice. Dkt. No. 114. Oppositions were filed by Claimants Geico, Federal Insurance, and Leede (Dkt. No. 120); Co-Defendant Dockmate (Dkt. No. 121); Cross-Claimant Atlantic Specialty Insurance Company (which insures one of the boats that allided with the *Pamina*) (Dkt. No. 122); and Third-Party Plaintiff Markel (Dkt. No. 124).

1 The Court heard oral argument on the motion on June 3, 2024 (Dkt. No. 129), and Glendinning's

2 motion is now ripe for resolution.

3 ## II.   ANALYSIS

4 ### A.   Legal Standards on Summary Judgment

5 Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the

6 movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

7 judgment as a matter of law." A principal purpose of summary judgment "is to isolate and dispose

8 of factually unsupported claims[,]" so that "factually insufficient claims or defenses [can] be

9 isolated and prevented from going to trial with the attendant unwarranted consumption of public

10 and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). In resolving

11 a motion for summary judgment, the court considers "the threshold inquiry of determining whether

12 there is the need for a trial—whether, in other words, there are any genuine factual issues that

13 properly can be resolved only by a finder of fact because they may reasonably be resolved in favor

14 of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

15 ### B.   Legal Standards as to LOLA Actions

16 With some exceptions not relevant here, LOLA allows the owner of a vessel to limit its

17 liability for any claim, debt, or liability caused by the vessel to the "value of the vessel and pending

18 freight." 46 U.S.C.A. § 30523.

19 When a vessel owner asserts its claim to limited liability under [LOLA], a burden-
shifting framework is employed to evaluate the shipowner's eligibility for limited
20 liability. First, the party seeking to recover damages must demonstrate the
shipowner's liability for its loss, either by showing the unseaworthiness of the
21 vessel or the negligence of the vessel's crew. …

22 Once the claimant establishes the particular cause of loss or damage, the vessel
owner is entitled to limit its liability only if the vessel owner then successfully
23 demonstrates it was neither privy to, nor had knowledge of, the condition of
unseaworthiness or the act of negligence that caused the accident.

24

*Washington State Dept. of Transp. v. Sea Coast Towing Inc.*, 148 F. App'x 612, 613 (9th Cir. 2005).

**C.     The Parties Agree that the CPA Claim Against Glendinning May Be Dismissed.**

Glendinning requested dismissal of the Third-Party Plaintiffs' CPA claim against it, and no party opposed that motion.  *See* Dkt. No. 125 at 11.  At oral argument, all counsel present indicated that this claim should be dismissed.  Therefore, the Court will grant Glendinning's motion to dismiss this claim.

**D.     There are Questions of Fact as to the Cause(s) of the Allision That Preclude Summary Judgment on All Other Claims.**

Glendinning filed its motion for summary judgment after the parties conducted, in the course of discovery, a coordinated inspection of the Glendinning and Dockmate systems removed from the *Pamina* in February 2024.  Dkt. No. 114 at 7–8.  That inspection involved assembling the Glendinning and Dockmate systems in an attempt to reenact conditions on the *Pamina* on the day of the allision.  *Id*.  Glendinning contends that the inspection revealed that the Glendinning equipment was working as it should be, but that a faulty Dockmate cable (with two wires shorted together, when they should have been kept separate) caused it to malfunction, which caused the allision. *Id*.

As support for this position, Glendinning cites a declaration from its expert, Danny Wells, indicating *Pamina*'s system malfunctioned as a result of a faulty Dockmate cord.  Dkt. No. 117. According to Glendinning, it is not "causally responsible for the allision or the claims against it[,]" and that "there was no product defect, no negligence, no deceptive act, and no fault generally" as a result.  Dkt. No. 114 at 16.

The parties that filed oppositions to Glendinning's summary judgment motion contend that there are still many open questions of fact about the cause of the allision, such that Glendinning

has not met its burden to show that it is entitled to summary judgment as a matter of law.  The opposing parties note that discovery is still ongoing, and they request that Glendinning's motion be denied as premature and that discovery continue to proceed as scheduled.

Specifically, Claimants Geico, Federal Insurance, and Leede oppose Glendinning's motion on the grounds that even if Glendinning's expert, Wells, is correct that the faulty Dockmate cord is what caused the Glendinning unit to put the vessel's engines in reverse, that fact alone would not necessarily "absolve Glendinning of liability."  Dkt. No. 120 at 2.  According to these Claimants, although "[Wells's] declaration supports a claim against Dockmate, it does not rule out all other causes [or] contributing causes, nor does it satisfy the burden of proving no genuine dispute of material fact for all claims against Glendinning."  *Id*. at 4.  Claimants emphasize that there is some evidence in the record that Glendinning and Dockmate made some effort to ensure compatibility between their products (Dkt. No. 120-1 at 15–16), which suggests that "there is at least a dispute of material fact about Glendinning's involvement in determining the compatibility of the products at issue."  Dkt. No. 120 at 5.  Claimants also point to a declaration from Delta Marine expert Christopher Heiberg suggesting that Glendinning's product contained a design defect that may have contributed to the allision at issue here.  *Id*. (citing Dkt. No. 120-1 at 48–49).

Similarly, Dockmate's opposition requests that Glendinning's motion be denied under Rule 56(d) because it has yet to complete discovery as to matters relevant to the claims in this action, including the maintenance and repairs performed on the *Pamina* by N C Power and Delta Marine, the removal of Dockmate and Glendinning products on the *Pamina* after the allision, the functionality of the Glendinning products on the *Pamina* during the allision (specifically its neutral safety switch), and the actual cause of the allision.  Dkt. No. 121 at 25–26.  Dockmate submitted declarations indicating that the cause of the allision could not be conclusively determined from the February 2024 inspection because the allision conditions could not be accurately replicated during

1   that inspection without modification. *See* Dkt. No. 121-3 ¶ 17, Dkt. No. 121-4 ¶¶ 9–12. Dockmate

2   also relies on the Heiberg declaration referenced above, which states that Glendinning's product

3   should have contained a fail-safe that would have rendered the system inoperable when it was in

4   a fault state (due to the Dockmate cord), rather than acting upon the full-reverse signal resulting

5   from the fault state. *See* Dkt. No. 121-2. It is Heiberg's opinion that the Glendinning product was

6   therefore defectively designed because it lacks adequate fail-safe measures. *Id*. ¶ 6(b).

7          Atlantic's opposition also cites Heiberg's declaration, and argues that Wells's declaration

8   is insufficient to establish the cause of the allision because it is conclusory and fails to identify the

9   facts that support Wells's conclusions as to the cause of the allision. Dkt. No. 122 at 9. Atlantic

10  also disputes Glendinning's contention that the products liability claims brought against it must

11  fail because its product was designed and manufactured years before Dockmate's product was

12  designed and added to the *Pamina*, by application of Washington's statute of repose (Dkt. No. 114

13  at 12). *See* Dkt. No. 122 at 10–13.

14         In its reply, although Glendinning acknowledges that the Heiberg declaration suggests that

15  its product has a design defect (the lack of a fail-safe), it contends the declaration itself is

16  insufficient to establish the existence of the defect. Dkt. No. 125 at 5. That may be true, but at

17  this juncture, the declaration is sufficient to show that there is a dispute of fact that precludes

18  summary judgment for Glendinning and/or that further discovery could establish such a defect.

19  *See* Dkt. No. 121 at 25–27, Dkt. No. 121-1 ¶ 15. Glendinning has not yet been deposed, and

20  Dockmate posits that this deposition and others are needed in order to discover whether the

21  Glendinning product had any defects or malfunctions on the date of the allision. Dkt. No. 121 at

22  26–27, Dkt. No. 121-1 ¶ 14. Furthermore, the parties disagree about the extent to which the

23  February 2024 inspection of the Glendinning and Dockmate systems accurately replicated the

24  allision conditions, and those disputes cannot be resolved on the record before the Court. *Compare*

Dkt. No. 121-3 ¶¶ 6–14, 17 (describing the modifications made before the inspection, such that the cause of the allision "could not be determined from the February 2024 inspection") *with* Dkt. No. 125 at 3 (Glendinning's assertion that "the exact accident sequence alleged by Pickering was replicated in the lab setting when the parts were reconnected").

Because the parties that have opposed Glendinning's motion have referenced a variety of disputes of fact that would impact Glendinning's liability and may be resolved via further discovery, which is ongoing, the Court cannot find at this time that Glendinning is entitled to summary judgment as a matter of law. *See, e.g.*, Dkt. No. 121-1 ¶¶ 13–15. Its motion is therefore denied as premature, without prejudice to re-filing at a subsequent point in this proceeding.

### III.     CONCLUSION

Glendinning's motion for summary judgment (Dkt. No. 114) is GRANTED IN PART and DENIED IN PART. The Court GRANTS the motion to dismiss the CPA claim against Glendinning because it is unopposed, and DENIES the motion in all other respects.

Dated this 10th day of June, 2024.

Kymberly K. Evanson
United States District Judge

ORDER - 9